IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANDREW PAVLICEK,

      Plaintiff,         OPINION AND ORDER

v.

                    19-cv-41-slc

ANDREW SAUL,
Commissioner of Social Security,

      Defendant.

---

  Plaintiff Andrew Pavlicek filed this action seeking reversal of the final decision of the Commissioner of Social Security[1] denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, respectively. 42 U.S.C. §§ 405(g), 423 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Pavlicek contends that the administrative law judge who denied his claim at the administrative level erred by: (1) failing to properly evaluate the opinion of Dr. Opaneye, Pavlicek's treating psychiatrist; (2) failing to adequately capture Pavlicek's moderate limitations in concentration, persistence, or pace when assessing Pavlicek's residual functional capacity; and (3) failing to obtain a reasonable explanation for a conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles*. For the reasons stated below, I am rejecting Pavlicek's arguments and affirming the commissioner's decision.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), I have substituted Andrew Saul, the current Commissioner of Social Security, for his predecessor. The clerk of court is directed to make this change in the case caption.

BACKGROUND

Pavlicek applied for DIB and SSI benefits in January 2015, alleging disability beginning August 31, 2014. Pavlicek was 43 years old on his alleged disability onset date. He had a high school education and had worked in the past as a tractor-trailer-truck driver.

Although he alleged a host of impairments, Pavlicek's primary impairment is tremor activity, the first episode of which occurred while waking from anesthesia after a tonsillectomy in October 2013. During these seizure-like episodes, Pavlicek's legs and sometimes his arms will shake or jerk (apparently uncontrollably, although there is some evidence to the contrary on this point), and he claims at times to lose consciousness. He also experiences less-severe tremors, particularly in his legs, on a regular basis. After an exhaustive medical workup failed to reveal any epileptic activity or physical cause for the tremors, Pavlicek's health providers determined that the episodes are pseudoseizures—seizures that resemble those caused by epilepsy but which are caused by something else, typically psychological conditions.[2] Accordingly, Pavlicek sought psychiatric care, and in March 2015, Jacqueline Bienek, Psy. D., diagnosed him with a panic disorder and a conversion disorder.[3] In addition, Pavlicek's treating psychiatrist, Dr. Bababo Opaneye, has diagnosed major depressive disorder.

Dr. Carlos Jusino-Berrios, a consulting psychologist for the state disability agency, reviewed Pavlicek's medical records and assessed his mental impairments on March 28, 2015. To evaluate Pavlicek's work-related mental abilities, Jusino-Berrios completed an electronic

---

[2] Https://www.healthline.com/health/pseudoseizures (visited April 9, 2020).

[3] A conversion disorder is a mental condition in which a person has blindness, paralysis, or some other neurological condition that can't be explained by medical evaluation. https://medlineplus.gov/ency/article/000954.htm (last visited April 8, 2020).

worksheet known as the Mental Residual Functional Capacity Assessment (MRFCA). This worksheet included several mental function items grouped under the following four categories: (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation. The form asked the consultant to choose one of five options in rating the claimant's functioning: (1) not significantly limited; (2) moderately limited; (3) markedly limited; (4) no evidence of limitation in this category; and (5) not ratable on available evidence. In completing the worksheet for Pavlicek, Jusino-Berrios chose the option "not significantly limited" for most areas and "moderately limited" in the following four areas:

- understanding and remembering detailed instructions;

- carrying out detailed instructions;

- maintaining attention and concentration for extended periods; and

- completing a normal workday and workweek without interruptions from psychologically based symptoms or performing at a consistent pace without an unreasonable number and length of rest breaks.

After rating Pavlicek's functioning, Dr. Jusino-Berrios then completed a "narrative description" of his work-related abilities in each of the four broad categories of functioning. In the category of understanding and memory, Dr. Jusino-Berrios found Pavlicek was "able to remember basic workplace locations and procedures," "able to remember and understand simple instruction," and "has moderate limitations in the ability to remember detailed instructions." AR 123. Describing Pavlicek's abilities in the area of sustained concentration and persistence, Dr. Jusino-Berrios wrote:

> The medical evidence available supports that the claimant is able to carry out simple instructions, follow simple work-like procedures, and make simple work-related decisions. Also claimant maintains the ability to sustain attention throughout extended periods of time (up to 2 hours at a time). [Medical

3

> evidence] endorses that the claimant maintains the ability to perform at a consistent pace particularly if is engaged in a [sic] simple, repetitive tasks. [Medical evidence] supports that the claimant have [sic] an adequate ability to maintain an [sic] regular schedule.

AR 124. Socially, Jusino-Berrios found that Pavlicek could "interact appropriately with the general public, co-workers, and supervisors," and in the area of adaptation, Jusino-Berrios found that Pavlicek had no limitations. Finally, in the "additional explanation" section, Dr. Jusino-Berrios wrote that, overall, Pavlicek was "able to understand, remember and execute simple one or two steps [sic] instructions, able to maintain attention, sustain concentration persistence and pace, adapt to changes and have limited interactions with others." AR 125.

At the reconsideration stage of the disability application process, Dr. Therese Harris completed the same form on August 11, 2015, mostly agreeing with Dr. Jusino-Berrios's findings. Harris found that Pavlicek would have "moderate" limitations in social interaction, but she agreed with Jusino-Berrios's bottom-line narrative conclusions about what Pavlicek could do in the workplace, including in the area of sustained concentration and persistence. AR 163-64, 182.

After the agency denied Pavlicek's claim initially and on reconsideration, he requested a hearing before an administrative law judge ("ALJ"), which was held on May 16, 2017. At the hearing, the ALJ heard testimony from Pavlicek and William Dingess, an impartial vocational expert. Pavlicek appeared with and was assisted by a non-attorney representative associated with a law firm. Pavlicek testified that he can no longer work because of anxiety, tremors, and pseudoseizures, some of which are associated with a loss of consciousness. Pavlicek estimated that he had had seven spells in the preceding year and a half in which he had lost consciousness, and seven more minor spells in which he did not. AR 77, 85. After a major spell, he said, he

4

is "drained" and confused and does not return to normal for a day or two. AR 85. The minor spells, on the other hand, passed quickly with no residual effects. AR 86. Pavlicek said his spells were typically anxiety-related, and that he used techniques suggested by his therapist to help him "get[] out of the small ones." AR 78. Pavlicek testified, however, that he had not seen his therapist for about a year because he was dropped after missing too many appointments. AR 73-74.

Dingess, the vocational expert, testified next. Pavlicek's representative agreed that Dingess was qualified to provide expert vocational testimony, but not as to the number of jobs available. AR 92. In response to questions by the ALJ, Dingess testified that, in his experience, an unskilled employee could not be employed competitively if he missed more than 8-12 days of work per year or was off task for more than 10 percent of the time, not counting regularly-scheduled breaks. AR 94-95. He then answered a series of hypothetical questions by the ALJ that asked him to assume an individual with various physical and limitations and to opine on whether such an individual could perform Pavlicek's past work or other jobs existing in the national economy. Based on the parameters of the ALJ's hypotheticals, Dingess testified that such an individual could not perform Pavlicek's past work, but could perform other jobs existing in significant numbers in the national and state economy. Dingess further explained the method by which he arrived at his job number estimates; the ALJ accepted this testimony and overruled Pavlicek's objection. AR 96, 106.

At Pavlicek's request, the ALJ held the record open so that he could submit a report from Dr. Opaneye. In that report, which Dr. Opaneye completed on June 5, 2017, Dr. Opaneye concluded that Pavlicek's mental impairment was severe enough to satisfy the listing for affective disorders and that he had numerous functional limitations that would preclude him from

5

competitive employment. AR 1230-38. Dr. Opaneye indicated that his conclusions applied "as far back as 2013" and that he had relied on Pavlicek's history and medical file, progress and office notes, and psychological evaluations in reaching his opinion, although Dr. Opaneye did not refer specifically to any such progress notes or evaluations.

On January 19, 2018, the ALJ issued a written decision that addressed Pavlicek's alleged disability under the five-step process set forth in the regulations. At steps one and two, the ALJ found that: (1) Pavlicek had not engaged in substantial gainful activity since his alleged onset date in 2013; and (2) he suffered from the severe impairments of major depression disorder, anxiety disorder with panic attacks, conversion disorder with mixed symptom presentation including non-neurological pseudoseizures, and a learning disorder. AR 13.

At step three, the ALJ concluded that Pavlicek did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 14. In so concluding, the ALJ expressly considered the degree of Pavlicek's limitation in various mental areas of functioning, finding that he had a moderate limitation in concentrating, persisting, or maintaining pace. AR 16. The ALJ went on to clarify that this limitation was "not a residual functional capacity assessment but [was] used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." AR 17. The ALJ observed that the RFC assessment requires a "more detailed assessment" and further advised that "[t]he following residual functional capacity assessment reflects the degree of limitation that I found in the [step three] mental functional analysis." AR 17.

As part of his step four RFC assessment, the ALJ assessed Dr. Opaneye's opinion in depth, ultimately declining to adopt its conclusions. The ALJ took issue with Dr. Opaneye's

6

opinion that Pavlicek was extremely limited in nearly every category of functioning: not only did this opinion bespeak a lack of careful assessment, it was inconsistent with Dr. Opaneye's own treatment notes and with the record as a whole, including Pavlicek's own statements about his limitations. Accordingly, the ALJ decided to give more weight to the opinions of the state agency consulting psychologists, finding their opinions to be more consistent with the record. AR 26.

The ALJ explained that in assessing Pavlicek's RFC, he had included social limitations to account for Dr. Harris's opinion that Pavlicek was moderately limited in this area. The ALJ further explained that such limitations were appropriate because they would reduce the overall stress of work activity for Pavlicek and would help him control his symptoms. AR 27. Based on these opinions, the ALJ determined that Pavlicek was:

- limited to understanding, remembering, and carrying out simple instructions and routine, repetitive tasks, which are defined [in the *Dictionary of Occupational Titles*] as having a GED language level of 1 and a reasoning level of 2 or below;

- capable of making simple work-related decisions or judgments, in an environment without fast-paced production requirements and with few, if any, changes in work duties;

- limited to only occasional, brief and superficial, interaction with the public and coworkers;

- limited to only occasional interaction with supervisors; and

- within the above limits, able to attend work, pay attention, and concentrate at work tasks within tolerable limits within the competitive economy.[4]

AR 18-19.

---

[4] The ALJ also found that Pavlicek has a number of postural limitations, but plaintiff does not challenge those findings on appeal.

Relying on Dingess's responses at the hearing to hypothetical questions incorporating these limitations, the ALJ found at step four that Pavlicek would be unable to return to his past work. AR 27. At step five, again relying on Dingess's testimony, the ALJ found that Pavlicek could make a vocational adjustment to various jobs existing in significant numbers in the national economy, namely, assembler, hand packager, and sorter. AR 29-30. Accordingly, the ALJ found that Pavlicek was not disabled and therefore not entitled to either DIB or SSI under the Social Security Act. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Pavlicek's request for review.

**OPINION**

**I. Standard of Review**

Judicial review of a final decision by the Commissioner of Social Security is authorized by 42 U.S.C. § 405(g). An ALJ's findings of fact are considered "conclusive," so long as they are supported by "substantial evidence." § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the Commissioner's findings, the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

At the same time, the court must conduct a "critical review of the evidence" before affirming the Commissioner's decision. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

**II. Dr. Opaneye's Opinion**

Pavlicek argues that the ALJ should have given controlling weight to Dr. Opaneye's opinion. Under what is known colloquially as the "treating physician rule," a treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]" 20 C.F.R. § 404.1527(c)(2).[5] An ALJ may properly discount the medical opinion of a treating physician so long as he provides "good reasons" for doing so. *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527 (d)(2)). If the ALJ determines that the opinion of a treating physician is not entitled to controlling weight, then he must consider what weight to give it by examining a number of factors such as the degree to which the opinion is supported by the evidence, its consistency with the record as a whole, and the specifics of the treating relationship. 20 C.F.R. § 404.1527© (listing factors). The ALJ need not discuss every factor listed in the regulation, but must "minimally articulate" the reasons for the weight he assigned to a medical opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

Here, the ALJ cited numerous reasons for rejecting Dr. Opaneye's opinions, including: (1) Dr. Opaneye wrote that his opinion was retrospective to 2013, even though he did not start seeing Pavlicek until May 15, 2015; (2) Dr. Opaneye's restrictive opinion was inconsistent with his treatment notes, which repeatedly indicated that Pavlicek's cognition, thought processes, memory, attention, and concentration were essentially normal throughout; (3) Dr. Opaneye

---

[5] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c; *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 FR 62560 at 62573-62574 (Sept. 9, 2016) Because Pavlicek's application was filed before March 27, 2017, the treating physician rule applies.

appeared to evaluate Pavlicek's condition using outdated Social Security standards, which suggested a lack of familiarity with the program; (4) Dr. Opaneye relied heavily on Pavlicek's subjective complaints; (5) Dr. Opaneye saw Pavlicek only for 25-45 minutes every two to three months; (6) Opaneye's rating of Pavlicek's functional limitations at the highest possible level of severity in all categories but one suggested a lack of careful evaluation; and (7) Dr. Opaneye did not explain the basis for his conclusions that Pavlicek would be absent from work five days or more each month and off task more than 30 percent of the work day. AR 15, 25-26. The ALJ recognized that "Dr. Opaneye is a treating medical source" whose opinion would ordinarily be given greater weight, but because that opinion was inconsistent with the medical evidence–including Opaneye's own treatment notes–the ALJ declined to give it such weight. AR 26.

Pavlicek attempts to poke holes in the ALJ's reasoning, but these attempts are futile. For example, Pavlicek does not dispute that Dr. Opaneye's progress notes from his bimonthly visits with Pavlicek repeatedly documented that Pavlicek had essentially normal thought processes, memory, attention, and concentration. Nor does Pavlicek dispute that Dr. Opaneye began seeing him in May 2015, two years after Dr. Opaneye said that his conclusions first applied. Pavlicek points out that Dr. Opaneye "had available" records dating back to late 2014 from other providers at the same clinic, including Pavlicek's psychotherapist Bienek; therefore, argues Pavlicek, "it would be reasonable" to assume that Dr. Opaneye would have reviewed and relied on those records in forming his retrospective opinion.

No, it wouldn't. Dr. Opaneye never referred to Bienek's notes and he never indicated that he was drawing from them in forming his opinions. Moreover, even Bienek's notes do not support the across-the-board extreme limitations endorsed by Dr. Opaneye. As Pavlicek

acknowledges, Bienek's notes indicate that Pavlicek's condition "waxed and waned," with Pavlicek at times shaking and appearing anxious and other times denying that he was anxious or under stress. Moreover, as the ALJ noted, Pavlicek told Bienek that his tremors were less prominent when he was busy and doing things, such as chopping wood and working on projects around the home, including remodeling his kitchen. In short, there is no evidence that Dr. Opaneye relied on any records besides his own in forming his opinions, but even if he had, those records do not provide the evidentiary support that the ALJ found lacking from Dr. Opaneye's own opinions.

Pavlicek also objects to the ALJ's finding that Dr. Opaneye relied on Pavlicek's subjective complaints in forming his opinions, arguing that assessment of mental impairments *necessarily* requires consideration of the patient's subjective complaints. This argument is unpersuasive. To be sure, a claimant's subjective complaints are relevant and important to the assessment of mental impairments, but so are the clinician's objective observations of the claimant, including his speech, memory, thought content, appearance, and responsiveness to questions, among other things. *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016) (treating doctor's opinion may be properly discounted if it is based upon the claimant's subjective complaints rather than objective medical evidence.) More importantly–and as the ALJ pointed out–some of the limitations that Dr. Opaneye endorsed were *more* restrictive than Pavlicek himself reported. For example, on a function report completed when he applied for benefits, Pavlicek *denied* having problems with memory, completing tasks, following instructions, or getting along with others, AR 346, yet Dr. Opaneye rated Pavlicek's abilities in these areas as extremely limited. AR 1232-34. This was a good reason to decline to give Dr. Opaneye's opinion controlling weight.

Finally, I reject Pavlicek's argument that reversal is required because the ALJ did not specifically address each factor set forth in 20 C.F.R. § 404.1527. The ALJ's decision makes clear that he was aware of and considered many of the factors, including Dr. Opaneye's treatment relationship with Pavlicek, the length of that relationship, the consistency of Opaneye's opinion with the record as a whole, and the supportability of his opinion. See 20 C.F.R. § 404.1527©. This court's inquiry is limited to whether the ALJ sufficiently accounted for the factors in 20 C.F.R. § 404.1527 and built an "accurate and logical bridge" between the evidence and his conclusion. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (ALJ "may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.") (internal quotations marks and citation omitted). That deferential standard is met here. *See Elder*, 529 F.3d at 415–16 (affirming denial of benefits where ALJ discussed only two of the relevant factors laid out in 20 C.F.R. § 404.1527),

### III. Concentration, Persistence, and Pace

Next, Pavlicek argues that the ALJ failed to adequately account in the RFC assessment for Pavlicek's "moderate" limitations in concentration, persistence or pace ("CPP"), as found by both the ALJ at step three of the sequential evaluation and by the state agency consulting psychologists, to whose opinions the ALJ gave great weight. An RFC must incorporate all of a claimant's limitations that are reasonably supported by the record, and an ALJ is required "to orient the VE to the totality of a claimant's limitations." *O'Connor-Spinner v. Astrue*, 627 F.3d

12

614, 619 (7th Cir. 2010). In particular, the Seventh Circuit has explained "[a]gain and again, . . . that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476-77 (7th Cir. 2019) (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). Even so, an ALJ need not use the specific terms "concentration, persistence, and pace" in the ultimate RFC or VE hypothetical so long as he employs adequate alternative phrasing. *O'Connor-Spinner*, 627 F.3d at 619.[6]

The commissioner responds that the ALJ's phrasing of the RFC in this case was adequate because it incorporated the findings of the state agency consulting psychologists as stated in their narrative assessments. Specifically, the commissioner points out that the ALJ's RFC closely tracked the limitations identified by Drs. Junios-Berrios and Harris in their narrative explanation of Pavlicek's "sustained concentration and persistence capacities," where they wrote that Pavlicek had the ability to: carry out simple instructions; follow simple work-like procedures; make simple work-related decisions; sustain attention for two-hour periods; perform at a consistent pace particularly if engaged in simple, repetitive tasks; and maintain a regular schedule. AR 124. As the commissioner points out, the Court of Appeals for the Seventh Circuit has held in both published and unpublished opinions that an administrative law judge is entitled to rely on a medical expert who "effectively translate[s] an opinion regarding the claimant's mental limitations into an RFC assessment." *Milliken v. Astrue*, 397 Fed. Appx. 218, 221 (7th Cir. 2010). *See also Burmester v. Berryhill,* 920 F.3d 507, 511 (7th Cir. 2019) ("an ALJ

---

[6] While Pavlicek frames his argument as a challenge to the ALJ's hypothetical question to Dingess, Pavlicek does not dispute that the ALJ's hypothetical accurately conveyed the limitations from the RFC. Accordingly, Pavlicek's argument is essentially a challenge to the RFC.

may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination."); *Baldwin v. Berryhill*, 746 F. App'x 580, 584 (7th Cir. 2018) (ALJ did not err in ignoring a finding that the claimant was moderately limited in concentration and pace where the psychologist's narrative in the same report indicated the claimant had the concentration and pace "necessary to fulfill a normal workday" and where subsequent medication improved claimant's mental health and mood); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015)("[A]n ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations."); *Capman v. Colvin*, 617 Fed. Appx. 575, 579 (7th Cir. 2015) (ALJ may reasonably rely on psychologist's "bottom line-assessment" in narrative section of residual functional capacity assessment); *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (in formulating hypothetical for vocational expert, ALJ reasonably relied on physician's opinion that claimant could perform low-stress, repetitive work). *But see DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("But even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms.").

In response, Pavlicek argues that the ALJ erred in relying on the narratives by Drs. Junios-Berrios and Harris because they did not adequately account for the "moderate" limitations the doctors endorsed on the "worksheet" portion of the MRFC form regarding sustained concentration and persistence. On this part of the form, the state agency psychologists found Pavlicek to have "moderate" limitations in these three areas: (1) the ability to carry out detailed instructions; (2) the ability to maintain attention and concentration for extended periods; and

14

(3) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Pavlicek sees an inconsistency in the way the psychologists "translated" these findings into their narrative, noting that while the state agency psychologists appear to have given the term "moderate" a work-preclusive meaning in the category of carrying out detailed instructions (insofar as their narrative found that Pavlicek was limited to carrying out *simple* instructions), they did not similarly reduce Pavlicek's RFC with respect to his "moderate" limitations in the remaining two categories. Because of this internal inconsistency, he argues, the ALJ erred in modeling his RFC after the state agency psychologists'.

Pavlicek's argument is not convincing. Dr. Jusino-Berrios and Dr. Harris explicitly addressed Pavlicek's ability to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods when they found in their narrative that Pavlicek had "the ability to sustain attention throughout extended periods of time (up to 2 hours at a time)," could "perform at a consistent pace particularly if engaged in a simple, repetitive tasks," and had "an adequate ability to maintain a regular schedule." AR 124. As the Seventh Circuit has recognized, "[a] moderate limitation is not a complete impairment." *Capman*, 617 Fed. Appx. at 579 (citing *Roberson v. Astrue*, 481 F.3d 1020, 1024 (8th Cir. 2007)). *See also* SSA, Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66164 (Sept. 26, 2016) (effective January 17, 2017) (clarifying that a "moderate" limitation means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.").

15

Accordingly, the state agency psychologists could properly conclude that, in spite of Pavlicek's "moderate" limitations in certain areas, he nonetheless retained sufficient ability in those areas to perform competitive work, particularly when the work performed was simple and routine. Moreover, "the RFC assessment is not an end in itself," it is a tool to help the evaluator assess what work-related activities the claimant can perform despite his limitations. *Milliken*, 397 Fed. Appx. at 222. Given that the state agency psychologists' narratives expressly addressed Pavlicek's ability to maintain attention, concentration and pace, and to maintain a work schedule, the ALJ could reasonably assume that the consultants' narrative statements accounted for *all* of Pavlicek's moderate limitations in those areas. Accordingly, the ALJ did not err by relying on the narratives in formulating the residual functional capacity assessment and hypothetical question to the vocational expert. *Dudley v. Berryhill*, 773 F. App'x 838, 842-43 (7th Cir. May 16, 2019) (rejecting argument that state agency psychologists' opinions were flawed because of internal inconsistencies within them and reaffirming that ALJ can rely on doctor's narrative where it adequately translates worksheet observations); *Guntle v. Saul*, No. 19-cv-103-pps, 2020 WL 582765, * 2 (N.D. Ind. Feb. 5, 2020) (ALJ accounted for claimant's moderate limitation in CPP by adopting state agency consultants' opinions that although claimant had moderate difficulties in maintaining CPP, he "still retained the ability to understand, remember, and carry out unskilled tasks, attend to task for sufficient periods of time to compete tasks, and manage the stresses involved with work."); *Welch v. Saul*, No. 18-cv-1066-bbc, 2020 WL 38998, *4 (W.D. Wis. Jan. 3, 2020) (finding same).

In his reply, Pavlicek argues for the first time that the ALJ's RFC and hypothetical did not adequately account for the facts that: (1) Pavlicek would be absent well more than the

16

permissible 8-12 days a year due to pseudoseizures and mental health treatment, and (2) Pavlicek would be off task more than the permissible 10 percent of the day because of anxiety and/or seizures. Reply Br., dkt. 11, at 8-9. By failing to raise this issue until his reply, however, Pavlicek has waived it. *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019).[7] Moreover, the ALJ was not persuaded that Pavlicek's allegations concerning his pseudoseizures were entirely credible, yet Pavlicek raises no challenge to the ALJ's credibility finding, so any challenge in that regard is waived as well. As for Pavlicek's alleged need for frequent treatment that would cause him to miss work, the bulk of the records cited by Pavlicek in support of his claim are counseling sessions with his therapist. Not only was Pavlicek no longer seeing her at the time of the hearing, he does not explain why, hypothetically, he could not resume such appointments outside of work hours.

In sum, the ALJ did not err in relying on the opinions of the state agency psychologists as a basis for several of the limitations in his RFC and corresponding hypothetical. Moreover, the ALJ explained that he included those limitations, as well as additional limitations such as no fast-paced production requirements and few changes in work duties, as a means of reducing the stress of work to account for Pavlicek's anxiety-related symptoms. Where, as here, the RFC is tailored to "account for the claimant's demonstrated psychological symptoms," it will be upheld. *See, e.g., Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (ALJ adequately accommodated claimant's social anxiety with RFC for simple, routine, repetitive tasks requiring no more than occasional contact with supervisors and coworkers, no contact with public, and an assigned work

---

[7] In what I surmise is an attempt to avoid a finding of waiver, Pavlicek strives to connect his argument about absenteeism and work pace to the opinions of the state agency psychologists. Reply Br., dkt. 11, at 9-12. His argument on this point is inscrutable.

17

area at least 10-15 feet away from coworkers); *O'Connor-Spinner*, 627 F.3d at 619 ("We also have let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform . . . most often . . . when a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work.") (citations omitted).

## IV. Alleged Conflict With the DOT

Pavlicek argues that the ALJ's finding that Pavlicek could perform jobs requiring few workplace changes and only 1-2 step instructions was inconsistent with the ALJ's conclusion that Pavlicek was capable of performing jobs with a GED Reasoning Level of 2, *i.e.*, the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *See Dictionary of Occupational Titles*, 207.685-014, 239.567-010 & App'x C, Components of the Definition Trailer, *available at* https://occupationalinfo.org/contents.html (last visited May 1, 2020). Pavlicek argues that, given such limitations, he should have been limited to jobs at Reasoning Level 1. *See id.* (stating that jobs that require a reasoning level of 1 require an employee to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job"). In a related argument, Pavlicek argues that Dingess's testimony conflicted with the *DOT* insofar as he identified jobs that were classified as requiring a Reasoning Level of 2. *See* Social Security Ruling 00–4p, 2000 WL 1898704, at *4

(Dec. 4, 2000) (directing ALJ to "[i]dentify and obtain a reasonable explanation for any conflicts" between a vocational expert's testimony and the dictionary, and also "explain in the determination or decision how he or she resolved the conflict."); *Overman v. Astrue*, 546 F.3d 456, 462–63 (7th Cir. 2008).

Pavlicek's argument is not persuasive. First, his assertion that a restriction to simple work or "few, if any, changes in work duties" precludes jobs requiring a Reasoning Level of 2 is not established law in the Seventh Circuit. *See Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (job with a reasoning level of three was appropriate for a former CNA with a capacity only to perform "simple" work and "follow simple instructions."). Second, even if Pavlicek is correct, the VE explicitly testified that there were numerous jobs that Pavlicek could perform even if he *was* limited to Reasoning Level 1 jobs. As the commissioner points out, one of the ALJ's hypotheticals asked the VE to assume an individual who was "limited to work at a GED reasoning level of one as well as language level of one." AR 103. Dingess testified that, based on his professional experience and on job numbers derived from state and federal employment projections, an individual so limited still would be able to perform certain assembler, inspector, and hand packager positions. AR 103-05. Specifically, Dingess testified that there would be 14,400 assembler jobs, 8,800 inspector jobs, and 20,900 hand packager jobs available nationally that could be performed at Reasoning Level 1. AR 103-04. Therefore, the ALJ's alleged failure to comply with SSR 00–4p was harmless because at the very least, a significant number of jobs cited by the ALJ and not inconsistent with the DOT remained available to Pavlicek. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be

19

harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result).[8]

ORDER

IT IS ORDERED THAT the decision of the Commissioner of Social Security denying Andrew Pavlicek's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 1st day of May, 2020.

BY THE COURT:

/s/

_____

STEPHEN L. CROCKER
Magistrate Judge

---

[8] In his reply brief, Pavlicek asserts for the first time that the VE's testimony about the number of jobs that could be performed at Reasoning Level 1 was speculative and that the number of jobs was not significant. As noted previously, arguments raised for the first time in a reply brief are waived. Moreover, neither argument is developed in sufficient detail to allow this court to address it. *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived[.]").